Subodh Chandra
Donald P. Screen
Michael Halberstam
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West 6th Street, Suite 400
Cleveland, OH 44113
Phone: (216) 578-1700
Facsimile: (216) 578-1800
E-mail: Michael.Halberstam@ChandraLaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

FORAN, *et al.*,

    Plaintiffs

    - against -

NATIONAL FOOTBALL LEAGUE, *et al.*,

    Defendants.

--------------------------------------------------------------------- X

ECF

18 Civ. 10857 (ALC)


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

**Table of Contents**

TABLE OF CONTENTS ................................................................. I

TABLE OF AUTHORITIES ........................................................... II

PRELIMINARY STATEMENT ....................................................... 1

PROCEDURAL HISTORY.............................................................. 2

FACTUAL BACKGROUND ............................................................ 3

    *A. The Plaintiffs*............................................................................................... *3*
    *B. The NFL Intentionally Misclassified Plaintiffs As Independent Contractors* ........................................ *4*
    *C. The Agreement* ........................................................................................... *6*
    *D. The Arbitration Provision* ........................................................................ *6*

DISCUSSION OF JUDGE SCHOFIELD'S ORDER ............................... 7

ARGUMENT ............................................................................. 10

    I. STANDARD ON MOTION TO COMPEL ARBITRATION .......................................... 10
    II.    THE ARBITRATION AGREEMENT IS INVALID, BECAUSE PLAINTIFFS HAVE NOT AGREED TO
    ARBITRATE ANY STATUTORY EMPLOYMENT RIGHTS WITH THE NFL ...................... 12
    III. ........................................................................ THE ARBITRATION CLAUSE IS UNENFORCEABLE
    17
    *A. Arbitration of Plaintiffs' Claims Would Prevent The Effective Vindication Of Plaintiffs' Rights, Unless*
    *The Court Severs The Cost-Sharing Provision* ..................................................................... *17*
    *B. Access To The Arbitral Forum* ..................................................................... *20*
    IV. ........................................................... ARBITRABILITY SHOULD BE DECIDED BY THIS COURT
    29
    V. THE COURT SHOULD NOT DISMISS PLAINTIFFS' CLAIMS ...................................... 29

CONCLUSION .......................................................................... 29

## **TABLE OF AUTHORITIES**

**CASES**

*Ahning v. Lehman Bros., Inc.,* No. 94 Civ. 9027 (CSH), 2000 WL 460443 (S.D.N.Y. April 18, 2000) .................................................................................................................................................. 23

*Alderman v. 21 Club Inc.*, 733 F.Supp.2d 461 (S.D.N.Y. 2010) ........................................................ 14

*Ball v. SFX Broadcasting, Inc.*, 165 F.Supp.2d 230 (N.D.N.Y.2001) ................................................ 25

*Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir.2002). .......................................................................... 12

*Bensadoun v. Jobe–Riat*, 316 F.3d 171 (2d Cir. 2003) ..................................................................... 11

*Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir.2001) .................................... 21-25

*Brady v. The Williams Capital Group, L.P.*, 16 N.Y.3d 454 (2010) ................................................ 17-18

*Brady v. Williams Capital Group, L.P.,* 64 A.D.3d 127 (1st Dep't 2009) ........................................ 17-18

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ............................................................ 12

*Buckley, et al. v. NFL, et al.*, 18-CV-03309 (LGS) (S.D.N.Y.) ................................................ 2, 7-10, 19

*Cheeks v. Freeport Pancake House, Inc., W.P.S. Industries, Inc.*, 796 F.3d 199 (2d Cir. 2015), ................. 8

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (2002) ..................................................................... 22

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.D.C. 1997) .............................................................. 22

*Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004) ............................................................. 26

*Cronas v. Willis Grp. Holdings Ltd.*, No. 06 CIV. 15295 (GEL), 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007) ......................................................................................................................................... 13, 15

*Dedon GmbH v. Janus et Cie*, 411 Fed.Appx. 361 (2d Cir. 2011) ....................................................... 12

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681(1996) ..................................................................... 11

*E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458 (E.D.N.Y. 2006) ...... 25

*Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111 (2d Cir. 2000) ........................................ 4

*Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018) ..................................................................... 15-16

*First Options of Chicago v. Kaplan*, 514 U.S. 938(1995) ..................................................................... 11

*Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993) ................................................................. 14

*Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302 (2d Cir. 2013) ...................... 12

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (U.S. 1991) ........................................... 17, 20, 23

*Giordano v. Pep Boys—Manny, Moe & Jack, Inc.*, No. CIV. A. 99–1281, 2001 WL 484360 (E.D.Pa. March 29, 2001) .................................................................................................................... 24

*Granite Rock Co. v. Int'l Bhd. Of Teamsters,* 130 S.Ct. 2847 (2010) ....................................... 11

*Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79  (2000) ................................... 20, 21, 24

*HDI Glob. SE v. Lexington Ins.* Co., 232 F. Supp. 3d 595 (S.D.N.Y. 2017) ..................................... 11

*Henry Schein, Inc. et al. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019) ........................................ 29

*In re A2P Antitrust Litig.,* , 2013 WL 5202824 (S.D.N.Y.2013) ......................................................... 11

*In re Lehman Bros. Inc.,* 478 B.R. 570 (S.D.N.Y. 2012) ....................................................................... 13

*Katz v. Cellco Partnership,* 794 F.3d 341, 347 (2d Cir. 2015) ......................................................... 8, 29

Lewis v. Epic Sys. Corp., No. 15-CV-82-BBC, 2019 WL 330168 (W.D. Wis. Jan. 25, 2019) ..... 16

*Masrobuono v. Shearson Lehman Hutton,* 514 U.S 52 (1995) ........................................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985) ..................................... 17

*Morrison v. Circuit City Stores, Inc.* 317 F.3d 646 (6th Cir.2003) ........................................... 21-26, 28

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ................................................................ 11

*Ouedraogo v. A-1 Intern. Courier Service, Inc.,* 2014 WL 1172581 (S.D.N.Y.) ................................ 14,15

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir.1998) ........................................... 22

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ................................................. 11

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010) ........................................... 17-19

*Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63 (2010) ......................................................................... 11

*Reyes v. Gracefully, Inc.,* 17 Civ. 9328, 2018 WL 2209486 (S.D.N.Y. May 11, 2018) ..................... 16

*Richardson v. National Football League, et al,* Docket No.: 1:07-cv-11632 (S.D.N.Y.) ........................... 6

*Rompalli v. Portnova,* No. 09 CIV. 3083 RMB/FM, 2010 WL 2034396 (S.D.N.Y. May 5, 2010). 13

*Henry Schein v. Archer & White Sales, Inc,* 139 S.Ct. 524 (2019)) ....................................................... 29

*Spinetti v. Serv. Corp. Int'l,* 324 F.3d 212 (3d Cir. 2003) ................................................................... 18

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) .......................................................... 16

*Tamburino v. Madison Square Garden, L.P.*, 115 A.D.3d 217 (2014)..................................................... 14

*Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151 (E.D.N.Y. Dec. 29, 2011) 13

*Thomason-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ................................... 12

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir.2003) ............................................................................... 22

*Veliz v. Cintas Corp.*, No. 03-01180(SBA), 2005 WL 1048699 (N.D.Cal. May 4, 2005)................. 22

*Zambrano.* v. *Strategic Delivery Solutions, LLC*, 2016 WL 5339552 (S.DN.Y. 2016) ...................... 17, 20

**STATUTES**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. ............................................... 2, 16,17

Federal Arbitration Act of 1925, as amended, 29 U.S.C. § 1, et seq. ........................................... 10

**OTHER AUTHORITIES**

Alexander J.S. Colvin, *An Empirical Study of Employment Arbitration: Case Outcomes and Processes*, 8 J. Legal Stud. 1  (March, 2011)...................................................................................................... 27

Deborah Rothman, *Trends in Arbitrator Compensation in* Dispute Resolution Magazine 8 (Spring 2007).......................................................................................................................................... 27

Plaintiffs Patrick Foran, Tommy Alston, Michael Armitage, Joseph Doorley, Thomas Malecek, and Dag Sohlberg (together "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration ("Mot." or "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiffs are former security specialists who were retained by the NFL to provide security services for NFL member teams and for the NFL generally. Defendant NFL knowingly and intentionally misclassified Plaintiff employees as "independent contractors," thus denying Plaintiffs overtime wages, employee pension-and-welfare benefits, and other rights and privileges to which they were entitled as employees (as well as denying the federal government and various state governments of tax receipts they would have received had Plaintiffs been properly classified). Defendants have now moved this Court to enforce an invalid and unenforceable arbitration provision in Plaintiffs' contracts with the NFL.

Despite their position that the relevant arbitration provision is invalid and unenforceable—and that public scrutiny of the NFL's misconduct in an Article III court would serve important public purposes—Plaintiffs, to forestall a lengthy legal battle, offered to submit their dispute to arbitration under a set of reasonable conditions. They proposed that the dispute be arbitrated under conditions suggested by Judge Schofield's recent order in the *Buckley* matter, conditions designed to ensure a reasonable and efficient arbitration process. Defendants failed to respond to Plaintiffs' written proposal and filed a motion to compel instead.

---

[1] Also submitted herewith, as Exhibits A through G to the Halberstam Declaration, are the declarations of each of the Plaintiffs herein, which shall be cited by each plaintiff's last name or collectively, as Plaintiffs. *E.g.* Foran Decl. (when referring to the Declaration of Patrick Foran) or Plaintiffs' Decls. (when referring to each Plaintiff's declaration).

1

For the reasons set forth here, Plaintiffs respectfully request that the Court deny Defendants' motion to compel arbitration. In the alternative, Plaintiffs seek an order (1) severing the cost-sharing provisions in the arbitration clause, (2) conditioning arbitration on the application of the American Arbitration Association's Employment Arbitration fee schedule, and (3) staying the proceedings before this Court pending the outcome of arbitration.

## PROCEDURAL HISTORY

On November 20, 2018, Plaintiffs filed their initial Complaint against the NFL (and other Defendants) seeking, among other relief, damages resulting from the NFL's misclassification of Plaintiff employees. On November 30, 2018, Judge Schofield declined this case as unrelated to the case of *Buckley, et al. v. NFL, et al.*, 18-CV-03309 (LGS) (S.D.N.Y.), and the case was reassigned to this Court. On December 10, 2018, this Court issued an order referring this case to mediation in accordance with its pilot program for claims involving the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and staying all proceedings in the interim. On December 11, 2018, Defendants NFL, the NFL Pension Plan, the NFL Capital Accumulation Plan, the National Football League Employee Reciprocal Flexible Benefits Plan, and the National Football League Capital Accumulation Plan accepted service of the Complaint and executed their waivers of summons. On December 13, 2018, the Defendants moved the Court to vacate the Mediation Order and/or schedule a pre-motion conference to address the NFL's request that the Court compel Plaintiffs to arbitrate their claims. The Court held a hearing on the matter on January 9, 2019, at which time it vacated the Mediation Order and set a briefing schedule for Defendants' motion to compel. On December 28, 2018, Plaintiffs filed their First Amended Complaint ("Complaint" or "Cmplt") naming additional ERISA Defendants and an additional Plaintiff.

At this Court's encouragement, Plaintiffs' counsel approached counsel for Defendants in the courtroom following the January 9 hearing to discuss possible points of agreement about how

to proceed in this case. Counsel for Defendants, Elise Bloom, asked that Plaintiffs' counsel consider agreeing to arbitrate this case, noted that Defendants were amenable to making the arbitration process more efficient, and suggested that counsel put a proposal into writing. Halberstam Declaration, ¶ 14. Counsel did so in a letter proposal sent to Defendants' counsel on January 30, 2019. *See* Proposal for agreement to arbitrate claims, Halberstam Declaration, Exhibit M ("Letter Proposal"). The Letter Proposal expressed Plaintiffs' willingness to arbitrate provided Defendants agree to:

1. Consider consolidating the claims of all Plaintiffs in one arbitration;
2. Proceed in arbitration under the Employment Arbitration fee schedule, as suggested by Judge Schofield's order to compel arbitration in the *Buckley* case; and
3. Waive the arbitration agreement's cost-splitting provision and the provision that each side bear its own attorneys' fees, and agree to commit these issues to the discretion of the arbitrator, as suggested by Judge Schofield's order compelling arbitration in the *Buckley* case.

Plaintiffs further explained: "The proposals we have made are in line with Judge Schofield's *Buckley* order, which you have urged both us and Judge Carter to recognize as deciding the question of arbitrability in this case. We therefore believe it is only fair to insist on the protections for Plaintiff employees that the *Buckley* order ensures."

Plaintiffs received no response to their letter. Halberstam Decl. ¶ 16. Defendants filed their motion to compel arbitration on February 6, 2019.

## **FACTUAL BACKGROUND**

### A. The Plaintiffs

Plaintiffs are former security specialists, who were retained by the Defendant National Football League ["NFL"] to provide security services for NFL member teams and for the NFL's Security Department. [Cmplt. ¶ 1]. Each Plaintiff worked for the NFL for at least 12 years. Some worked for the NFL for as long as 26 years. Cmplt. ¶ 2. Plaintiffs were referred to as "Security

Representatives" for the NFL, and were charged with ensuring that the NFL's rules, security procedures, and security protocols were implemented by the NFL member teams across the country. Cmplt. ¶ 3.

## B. The NFL Intentionally Misclassified Plaintiffs As Independent Contractors

The NFL's Security Representatives were employees of the NFL, but Defendant NFL intentionally misclassified Plaintiff security representatives as "independent contractors," thus denying Plaintiffs overtime wages, employee pension-and-welfare benefits, and other rights and privileges to which they were entitled as employees. Cmplt. ¶¶ 4, 102–103. In addition, Defendants violated numerous federal and state laws, and allowed Defendant NFL to avoid paying federal FICA and other taxes as well as state employment taxes.

Employee status principally turns on the employer's control over the "manner and means" by which a worker completes his/her assigned work. Ultimately, the test is an objective test, and the contract, the worker's tax treatment, or the parties' intentions in forming the contract are not dispositive.[2]

We refer to the Complaint, ¶¶ 47 – 102, for a recitation of the work required of NFL Security Representatives and for all the ways in which the NFL exercised control over the work of the security representatives. The NFL's control, not merely over the result of the security representatives' work (i.e. secure games, thorough investigations, safe stadiums), but over the "manner and means" of the security representatives' employment, is well-supported by the security representatives' contract itself which incorporates by reference many of the various practices, procedures, reporting requirements, and resources the security representatives were to

---

[2] *See e.g.*, *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 117 (2d Cir. 2000) ("[C]ourts *should not* ordinarily place extra weight on the benefits and tax treatment factors enumerated in *Reid,* and *should* instead place special weight on the extent to which the hiring party controls the 'manner and means' by which the worker completes her assigned tasks,' moreover the employment contract is not the deciding factor...")

4

follow in completing their work. These are further spelled out in the NFL's Security Operations Manual, the NFL Best Practices for Stadium Security, the NFL Game Day Operations Check List, the NFL's Investigative Manual for Security Representatives, stadium inspection checklists and reporting forms, right down to the "Dress Code for Security Representatives." The securities representatives were agents of the NFL, were fully integrated into the NFL's chain of command, and performed a core function for the NFL in ensuring that the NFL's rules, security procedures, and security protocols were observed by all NFL employees, member teams (and their employees), the stadiums in which games are played, game officials, and players. In addition, the NFL dictated when Plaintiffs were to perform their work and whom the security representatives should hire as their associates. The NFL paid for the equipment utilized by the security representatives in performing their duties. The NFL reimbursed the security representatives for their expenses, based upon the same reimbursement schedule that applied to employees. And the services provided by the security representatives, finally, were services critical to the NFL's operations, purpose, and mission. An objective assessment of the relationship between the security representatives and the NFL establishes that the security representatives were employees.

Indeed the NFL misclassified Plaintiffs as independent contractors despite the fact that directors in the NFL's security department—who worked directly with (and supervised) the security representatives and were thus most familiar with the scope and the details of their work assignments—acknowledged that the security representatives were employees. Cmplt. ¶¶ 108-109. The NFL thus misclassified the security representatives knowingly and intentionally.

In this way the NFL cheated security representatives, and perhaps other employees, out of benefits to which they were entitled. And the NFL has cheated the United States government and one or more state governments out of substantial tax dollars.

Notably, this is not the first time that the NFL has misclassified employees. The NFL was sued by a class of urine testers for age discrimination in *Richardson v. National Football League, et al*, Docket No.: 1:07-cv-11632 (S.D.N.Y.) Before bringing suit, the urine testers obtained a ruling from the IRS concluding that, contrary to the NFL's classification of the urine testers as "independent contractors," the urine testers were, in fact, NFL employees. The NFL entered into a confidential settlement with the *Richardson* plaintiffs.

## C. The Agreement

Like all the other NFL security representatives, the Plaintiffs were required to sign a "Security Representative Consulting Agreement" with the NFL every year or two (the "Agreement" or "Agreements").[3] Given the length of their tenures with the NFL, Plaintiffs signed numerous such Security Representative Consulting Agreements, although there were no significant changes in the services that Plaintiffs were required to perform. In all Agreements, the NFL designated each Plaintiff as an independent contractor despite setting forth, by reference to the above-mentioned procedural manuals and protocols and in great detail, the manner and means by which Plaintiff security representatives were required to perform their work. *See* Halberstam Declaration, Exhibits H–L.

## D. The Arbitration Provision

At the conclusion of the Agreements, under "Miscellaneous," the Agreements state:

> Except as set forth in Section 17(b) (Availability of Equitable Remedies), any dispute arising out of this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association. The arbitration shall be conducted in accordance with the American Arbitration Association Rules. Any such arbitration shall be instituted in New York County, New York. Both parties shall give

---

[3] Some security representatives signed individually, while others signed on behalf of a corporate entity. In the latter circumstance the security representative was identified as a "key person."

6

> the arbitrators access to all documents, facilities, and personnel within their respective control to permit the arbitrator to perform his or her function. Judgment upon the award may be rendered in any court having jurisdiction. Each party shall pay an equal share of the arbitrator's fees and expenses and shall bear its own attorneys' fees, witness fees and other costs concerning the arbitration.

Note that this arbitration provision (1) is very general and does not specifically advise the Plaintiffs that they are agreeing to waive their ability to pursue federal statutory employment rights in an Article III court; (2) includes a cost-splitting provision; (3) requires that Plaintiffs must bear their own attorneys' fees, witness fees and other costs. Moreover, (4) it does not state which procedures of the American Arbitration Association should apply to an arbitration (e.g. the AAA's Employment Arbitration Rules or its Commercial Arbitration Rules).

As each Plaintiff states in his attached Declaration, he did not understand or intend this provision to require him to arbitrate statutory employment rights, all of which the NFL expressly disclaimed in the arbitration agreement itself as well as elsewhere in the Agreements. In signing the Agreements, each Plaintiff instead relied on the NFL's multiple representations of his status as an independent contractor. *See* Plaintiffs' Declarations. Because an employer bears the burden of accurately classifying its workers, Plaintiffs' reliance on the NFL's representations was more than reasonable. The onus is on the employer to accurately classify its workers.

## DISCUSSION OF JUDGE SCHOFIELD'S ORDER

The NFL contends that Plaintiffs should arbitrate their claims under an invalid and unenforceable arbitration agreement that was litigated in a different case, captioned *Buckley, et al. v. The National Football League*, No. 1:18-cv-3309 (S.D.N.Y.) ("Buckley"), to which case Plaintiffs were not parties. Defendants suggest that, by virtue of the Court's order in Buckley, Plaintiffs here are somehow improperly before this Court.

7

The *Buckley* order provides absolutely no support for this suggestion. The order did not *dismiss Buckley* or otherwise determine that it had been improvidently brought. Instead it merely issued a *stay*, and in so doing recognized that the *Buckley* plaintiffs were properly before the court, as Plaintiffs here.[4]

As was their obligation, Plaintiffs did file a "related case statement" that identified *Buckley*, currently pending before Judge Schofield, as a potentially related case. The fact that Judge Schofield declined the case "as not related" (See Docket, 11/30, 2018), however, is significant. The likely reason for Judge Schofield's decision is that *Buckley* does not, as Defendants claim, involve nearly duplicative claims as to those in *Foran*. While both complaints contain FLSA and ERISA claims, the gravamen of the *Buckley* plaintiffs is that they were terminated by the NFL because of their age. They bring claims under the ADEA and New York City and State Human Rights Laws, and make detailed factual allegations in support of their age discrimination claims. In contrast, the *Foran* Complaint does not allege age discrimination, but asserts Federal Labor Standards Act ("FLSA") claims and several other non-age-related claims against the NFL.[5]

In *Cheeks v. Freeport Pancake House, Inc., W.P.S. Industries, Inc.,* 796 F.3d 199 (2d Cir. 2015), the Second Circuit recognized that FLSA cases fall into a special category: The "FLSA's primary remedial purpose," according to the *Cheeks* court, is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." 796 F.3d 199, 207. *Cheeks* recognized that FLSA cases are small and "tend to settle for less than \$20,000 in combined recovery and attorney's fees." *Id.* Considering the limited recovery

---

[4] In staying the case pending the completion of arbitration, Judge Schofield followed Second Circuit precedent in *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), which held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Here too, dismissal of Plaintiffs' claims would violate this rule.

[5] Both the *Buckley* Plaintiffs and the Plaintiffs before this Court assert FLSA claims and ERISA claims.

employees can expect under the FLSA, the costs of arbitration weigh heavily on an employee's decision whether to pursue his rights. Here the arbitration provision requires that "each party shall pay an equal share of the arbitrator's fees and expenses and [each party] shall bear its own attorneys' fees, witness fees and other costs concerning the arbitration." (including a "Cost-Splitting Provision," and an "Attorneys' Fees Provision"; collectively the "Cost-Sharing Provision"). As Plaintiffs argue below, this raises special issues of law and fact in the FLSA context (issues not addressed in *Buckley*), under the judge-made "effective vindication" exception to arbitrability.

The *Buckley* order, moreover, does suggest that Plaintiffs are protected in several ways from an unfair arbitration process, and that they will not be prevented from effectively vindicating their statutory rights, or accessing the forum, if compelled to arbitrate under the same clause at issue here.

First, the *Buckley* order states that the AAA's Employment Arbitration Rules and Mediation Procedures "govern the parties' arbitration proceeding." *Buckley Order*, at *8. This is significant, because the AAA's Employment Arbitration Fee Schedule requires the employer to bear the costs of arbitrator compensation, and shift most of the arbitration fees and administrative expenses onto the employer. Halberstam Declaration, Exhibit O. In contrast, the AAA's Commercial Fee Schedule, which is designed to apply in disputes among business entities presumably better able to absorb the expense, imposes substantially higher fees on claimants and requires the parties to split the costs of arbitrator compensation and other administrative expenses. Halberstam Declaration, Exhibit P.

Second, the *Buckley* order provides that the allocation of attorneys' fees and costs is for the arbitrator to decide. This appears to imply that the court would not itself countenance enforcement of the Cost-Sharing Provision. This is significant because New York courts have

held that the provisions of an arbitration agreement trump the AAA rules and that an arbitration provision should be enforced even if it conflicts with the AAA's rules. *Infra*, p. 19.

In noting that the Attorney's Fee Provision is unenforceable and that the AAA's Employment Fee Schedule will apply, the *Buckley* Court appears to rely on the following suggestion by the *Buckley* Defendants (who are represented by the same lead counsel as Defendants in this case). *See* NFL's *Buckley* Reply, p. 10 FN 13, Halberstam Declaration, Exhibit N.

> Given the nature of Plaintiffs' claims, the Court could specify that the instant dispute be compelled pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures and Employment Due Process Protocol, which provide sufficient due process protections for Plaintiffs to vindicate their statutory rights, including the right to receive "any remedy or relief that would have been available to the parties had the matter been heard in court.

The *Buckley* court appropriately takes Defendants up on their suggestion by noting that the AAA will apply its employment arbitration rules, and that the attorneys' fee provision does not govern. But it does not go far enough. The court does not so order. Given that the case is stayed before Judge Schofield, the NFL is unlikely to challenge these assumptions during arbitration. But, as a result, the *Buckley* order does not carry the weight of precedent that would ensure, or at least support, the effective vindication of Plaintiffs' rights in this case. This Court should remedy that deficiency in Judge Schofield's order.

## ARGUMENT

## I. STANDARD ON MOTION TO COMPEL ARBITRATION

Arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Federal Arbitration Act of 1925, as amended ("FAA") § 2, 29 U.S.C. § 2 (2019). In general, the FAA "reflects the

10

fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776 (2010). Accordingly, a court should order arbitration if it is satisfied that the agreement to arbitrate: (1) was validly formed; (2) is enforceable; and (3) applies to the dispute at issue. *In re A2P Antitrust Litig.,* , 2013 WL 5202824, at *5 (S.D.N.Y.2013) (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters,* 130 S.Ct. 2847, 2858–59 (2010)). Arbitration agreements are "as enforceable as other contracts, *but not more so.*" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (emphasis added); *HDI Glob. SE v. Lexington Ins.* Co., 232 F. Supp. 3d 595, 601 (S.D.N.Y. 2017).

Courts interpret arbitration provisions by "apply[ing] ordinary state-law principles that govern the formation of contracts ." *First Options of Chicago v. Kaplan,* 514 U.S. 938, 944 (1995). Traditional contract defenses "such as fraud, duress, or unconscionability ... may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652 (1996). *HDI Global*, 232 F. Supp. 3d at 601. Here New York contract law applies, because the Agreements contain a New York choice of law clause. Halberstam Declaration, Exhibits H–L.

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the nonmoving party." *Id.* "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

## II.  THE ARBITRATION AGREEMENT IS INVALID, BECAUSE PLAINTIFFS HAVE NOT AGREED TO ARBITRATE ANY STATUTORY EMPLOYMENT RIGHTS WITH THE NFL

A party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so. *Bell v. Cendant Corp.,* 293 F.3d 563, 566–67 (2d Cir.2002). Challenges "specifically [to] the validity of the agreement to arbitrate" itself "must be decided by the court…" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Dedon GmbH v. Janus et Cie*, 411 Fed.Appx. 361, 363 (2d Cir. 2011).

"When interpreting a contract [under New York law], the 'intention of the parties should control, and the best evidence of intent is the contract itself.' " *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013). "[W]hile there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." *Thomason-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (internal citations and quotations omitted). Indeed, "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Masrobuono v. Shearson Lehman Hutton*, 514 U.S 52, 57 (1995).

Here, plaintiff security representatives had no expectation of, and no intent to arbitrate any statutory employment rights with Defendanet NFL—and certainly not with any of the named-, and un-named plan defendants, with whom they did not sign an arbitration agreement at all. Plaintiffs Declarations. The NFL contract explicitly disclaims both the formation of an employment relationship, and explicitly states that the security representatives have no rights as employees under the contract. *Id.* The plaintiffs therefore did not, and could not have intended to arbitrate employment rights not within the contemplation of the contract.  "[D]oubt regarding the scope of an arbitration  agreement 'should not be …resolved at the expense of 'a reasonable

12

reading of the Agreement, in light of' the understanding of the parties at the time that they entered into the employment contract." *Cronas v. Willis Grp. Holdings Ltd.*, No. 06 CIV. 15295 (GEL), 2007 WL 2739769, at *12 (S.D.N.Y. Sept. 17, 2007). But the parties' intent must be ascertained from the contract as a whole. "[I]ntent is derived "from the plain meaning of the language employed in the agreements, . . . when the agreements are 'read as a whole,'" *In re Lehman Bros. Inc.*, 478 B.R. 570, 586 (S.D.N.Y. 2012) (citing *WWW Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157 (N.Y.1990).

This view is further defined in the employment context. New York "courts have required employees to arbitrate discrimination claims only where the arbitration clause specifically 'placed the employee plaintiff on notice that he or she was waiving his or her right to bring employment discrimination claims in the federal courts.' " *Cronas*, 2007 WL 2739769, at *10 (denying motion to compel arbitration because arbitration clause merely required arbitration of any dispute that "arises under the agreement"); *Rompalli v. Portnova*, No. 09 CIV. 3083 RMB/FM, 2010 WL 2034396, at *5 (S.D.N.Y. May 5, 2010), report and recommendation adopted, No. 09 CIV. 3083 RMB/FM, 2010 WL 2034362 (S.D.N.Y. May 21, 2010) ("[E]mployment discrimination claims fall within the scope of an arbitration clause as long as the word 'discrimination' is mentioned." ) (citing *Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04 Civ. 0299, 2004 WL 1386145, at *1 (S.D.N.Y. June 22, 2004) (compelling arbitration of Title VII claims where arbitration agreement required arbitration of "any dispute ... concerning any ... aspects of your employment relationship, including, without limitation, discrimination claims"); *see also Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at *7 (E.D.N.Y. Dec. 29, 2011) (citing *Cronas* with approval and compelling arbitration only because the arbitration clause referred to "all employment-related legal disputes."); *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 629, 619 N.E.2d 998, 1000

(1993) (requiring arbitration of employment discrimination claims based on employee's agreement "to arbitrate any dispute, claim or controversy that may arise between [himself] and [his] firm that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I registered" where NY Stock Exchange Rule 347 required arbitration of "[a]ny controversy between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative.") (emphasis added); *accord Tamburino v. Madison Square Garden, L.P.*, 115 A.D.3d 217, 222–23, 980 N.Y.S.2d 83, 87–88 (2014) (A collective bargaining agreement "cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement is "clear[ ] and unmistakable [ ]" that the parties intended to arbitrate such individual claims.") (collecting cases and citing *Alderman v. 21 Club Inc.*, 733 F.Supp.2d 461, 469–470 (S.D.N.Y. 2010) ("A 'clear and unmistakable' waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action *arising out of his employment* to arbitration; or (2) where the arbitration clause *specifically references or incorporates a statute* into the agreement to arbitrate disputes") (emphasis added).

Here, the arbitration clause itself does not reference statutory employment rights, nor does it reference any employment relationship at all. To the contrary, the arbitration clause excludes them by its very terms. Neither the contract as a whole, nor the arbitration clause itself support the contention that plaintiff security representatives intended to arbitrate any statutory employment rights with the NFL.

Defendants rely on *Ouedraogo v. A-1 Intern. Courier Service, Inc.*, 2014 WL 1172581, at *3-4 (S.D.N.Y.), which purports to follow *Cronas* but which effectively disregards *Cronas's* (and its progeny's) insistence on clear notice of waiver in the employment context, and does so

14

without citing relevant authority. Instead of applying *Cronas* and its progeny, *Ouderaga* purports to distinguish *Cronas* (by citing facts not present in either *Cronas* or the present case) on the question whether the employees resisting arbitration had been properly put on notice that they were waiving their right to have their statutory employment rights litigated in an Article III court. While *Ouderago* did not dispute that the arbitration agreement under consideration failed to reference any employee rights at all, it distinguished *Cronas* based on a questionable analysis of the language in the respective arbitration agreements. In *Cronas,* the arbitration clause required arbitration of any dispute that "arises under the agreement" without more, *id.* at *10–11, while in *Ouedraogo* the arbitration agreement required arbitration of "any dispute, claim, question, or disagreement arising from" or "relating to" the Agreement, *id* at *1 & *4. *Ouderago* finds that, as a matter of law, the additional phrase "relating to" in the relevant arbitration agreement, indicates that plaintiff agreed to arbitrate his statutory employment rights under the FLSA. But in so doing *Ouderaga* ignores longstanding precedent requiring specific notice that employment-related claims are covered by an arbitration agreement.

Defendants' reliance on *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1644, 200 L. Ed. 2d 889 (2018) to support the arbitrability of FLSA claims by misclassified employees is unavailing. To the contrary, *Epic Systems* very much underscores the importance of specific notice. In *Epic Systems*, the defendant employer called attention to the relevant arbitration agreement via an E-mail to all of its employees, including the plaintiff, which arbitration clause provided:

> Agreement to Arbitrate. Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "covered claims" that arise or have arisen between me and Epic....
>
> [Covered claims are] any statutory or common law legal claims, asserted or unasserted, alleging the underpayment or overpayment of wages, expenses, loans, reimbursements, bonuses, commissions,

> advances, or any element of compensation, based on claims of
> eligibility for overtime, on-the-clock, off-the-clock or other
> uncompensated hours worked claims, ... or any other claimed
> violation of wage-and-hour practices or procedures under local,
> state or federal statutory or common law.

*Lewis v. Epic Sys. Corp.*, No. 15-CV-82-BBC, 2019 WL 330168, at *2 (W.D. Wis. Jan. 25,

2019). *See also Reyes v. Gracefully, Inc.,* 17 Civ. 9328, 2018 WL 2209486 at *6 (S.D.N.Y. May

11, 2018) (overtime claims "plainly fall within the scope of the Arbitration Agreement, which

covered '[c]laims arising under the Fair Labor Standards Act' and the 'New York Labor Law');

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 294 (2d Cir. 2013) ("the Arbitration Agreement

specifically states that '[c]laims based on federal statutes such as ... the Fair Labor Standards

Act,' '[c]laims based on state statutes and local ordinances, including state and local anti-

discrimination laws,' and '[c]laims concerning wages, salary, and incentive compensation

programs' are subject to the terms of the Arbitration Agreement").

Unlike in *Epic Systems*, the arbitration clause here does not specify that it covered

Plaintiffs' statutory employment claims; nor does it contain any reference to statutory employee

rights or to an employment relationship at all. To the contrary, the arbitration clause, referencing

"*the services performed by Consultant pursuant* to this Agreement," by its very terms, disavows

any employment relationship: (1) it classifies the security representative as a "consultant" (i.e.

not an employee), and (2) it defines such consultant's "services" as being performed "pursuant to

the Agreement," where the Agreement in its entirety explicitly disavows an employment

relationship. The NFL arbitration clause cannot fairly be interpreted as an agreement by the

security representatives to arbitrate any employment-related statutory claims. The law is clear

that an arbitration clause evidencing such agreement must be more specific.

In light of the foregoing, Defendants have not met their burden of showing that a valid agreement to arbitrate Plaintiffs' claims with the NFL was ever formed. This court should therefore deny Defendants' motion to compel arbitration.

## III. THE ARBITRATION CLAUSE IS UNENFORCEABLE

### A. Arbitration of Plaintiffs' Claims Would Prevent The Effective Vindication Of Plaintiffs' Rights, Unless The Court Severs The Cost-Sharing Provision

While the "enforceability of an arbitration agreement is decided in the first place under the applicable body of state law," "a federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'"*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 20, 111 S. Ct. 1647, 1649 (U.S. 1991).

Here the arbitration provision requires Plaintiffs to "pay an equal share of the arbitrator's fees and expenses and ... bear its own attorneys' fees, witness fees and other costs concerning the arbitration." But the FLSA compels an award of reasonable attorney's fees and costs to a prevailing plaintiff. 29 U.S.C. § 216(b). ("The Court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added). In *Zambrano. v. Strategic Delivery Solutions, LLC*, 2016 WL 5339552 (S.DN.Y. 2016), the Court held that "the arbitration provision cannot preclude [FLSA Plaintiffs] from recovering their reasonable attorneys' fees and costs should they prevail on their claims." *Id.*, at *6. The arbitration provision is therefore unenforceable as it stands.

17

Under New York Law, the appropriate remedy "is to sever the improper provision of the arbitration agreement…" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124–25 (2d Cir. 2010) (requiring severance or waiver for effective vindication) (citing *Brady v. Williams Capital Group, L.P.,* 64 A.D.3d 127, 878 N.Y.S.2d 693, 701 (1st Dep't 2009)); *See also Brady v. The Williams Capital Group, L.P.*, 16 N.Y.3d 454 (2010); *accord Morrison*, at 675 ("district court erred in compelling arbitration … without first severing these unenforceable provisions"); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 220 (3d Cir. 2003) ("district court should have severed an unenforceable provision from an otherwise enforceable arbitration agreement").

In *Buckley*, the Court recognizes this result, but, as already noted above, does not go far enough to explicitly condition the enforcement of the arbitration clause on the severance of the Cost-Sharing Provision. But this leaves claimants vulnerable to a decision by an arbitrator to leave at least parts of the Cost-Sharing Provision in place. And New York law may also overrule certain fee adjustments that the AAA's Employment Rules makes in favor of employees, based on contrary provisions in the arbitration agreement.

In *Brady v. The Williams Capital Group, L.P.*, 16 N.Y.3d 454 (2010), for example, the New York Court of Appeals held that where inconsistency exists between an arbitration agreement and the AAA rules by which parties have agreed to arbitrate, the AAA must enforce the arbitration agreement rather than the AAA rules.

The arbitration clause in *Brady* required plaintiff employee to arbitrate her Title VII claims and the parties to "equally share the fees and costs of the Arbitrator." *Brady v. The Williams Capital Group*, *LP*, 17 Misc. 3d, 325, 328 (N.Y. Sup. Ct. 2007), *rev'd*, 878 N.Y.S.2d 693 (2009), *aff'd as modified*, 16 N.Y.3d 454. But the AAA applied its "employer pays" rule under the American Arbitration Association's Employment Arbitration Rules, which required the employer to pay the entire arbitrator compensation, relying additionally on the AAA's National

Employment Arbitration Rules that if "material inconsistency" exists between an arbitration agreement and the AAA rules, the arbitrator is to apply the AAA rules. *Brady*, 16 N.Y.3d, at 465-65. When the employer's refusal to pay was challenged by the employee, the trial court sided with the employer, reasoning that specific provisions in the arbitration agreement would trump conflicting AAA rules. *Brady* 16 N.Y.3d, at 465. The court stated that it could not "rewrite this unambiguous agreement by compelling respondent to comply with an AAA rule that [Brady] had agreed would not bind the parties." *Brady*, 17 Misc. 3d, at 328.

The trial court thus held that Brady would be required to pay her portion of the AAA fee to permit the arbitration to proceed. The New York Court of Appeals affirmed the trial court in its holding that "the terms of the parties' Arbitration Agreement, rather than the AAA rules, controlled," *Brady,* 16 N.Y.3d., at 465, but directed the trial court to "decide, in the first instance, whether to sever the clause and enforce the rest of the Arbitration Agreement, or to offer petitioner a choice between accepting the "equal share" provision or bringing a lawsuit in court." *Brady*, 16 N.Y.3d, at 468.

In light of *Brady* and *Ragone*, this court should sever the Cost Sharing Provision— including the portion that each party shall bear its own "witness fees and other costs"— if it intends to leave the allocation of fees and costs to the arbitrator.

In its *Buckley* Reply to Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration, the NFL, appears to anticipate this result by expressing a willingness to waive the enforcement of the Cost-Sharing Provision, as the Defendants did in *Ragone*.[6] But the *Buckley*

---

[6] "Given the nature of Plaintiffs' claims, the Court could specify that the instant dispute be compelled pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures and Employment Due Process Protocol, which provide sufficient due process protections for Plaintiffs to vindicate their statutory rights, including the right to receive "any remedy or relief that would have been available to the parties had the matter been heard in court…" NFL's *Buckley* Reply, p. 10 fn. 13, Halberstam Decl., Exhibit N

*See also* "To the extent the Court were to find the provision regarding arbitrator fees a hindrance to enforceability (which the NFL respectfully submits that it is not), the Court could sever the arbitrator fees clause in accordance with Section 18(h) of the Agreements prior to compelling arbitration or, alternatively, the fee-splitting provision could be waived by the NFL. *See, e.g., Salzano*, 2014 WL 3583195, at \*5 (compelling arbitration where

19

court did take Defendants up on this offer. In any events, plaintiffs in this case cannot rely on Defendants' waiver in another case. Nor would the NFL's proposed condition (or waiver) be sufficient in this case, because it cleverly fails to sever the cost sharing provision.

This Court should therefore, at a minimum sever the Cost-Sharing Provision.

## B. Access To The Arbitral Forum

The Court should sever the Cost-Sharing Provision in its entirety. The Court should further condition arbitration on the application of the AAA's Employment Fee Schedule.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 1653 (U.S. 1991), the Supreme Court held that "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." 500 U.S., at 28 (emphasis added) (citing Mitsubishi, 473 U.S., at 637.) In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court held that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." It also stated that, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Plaintiffs thus have the right to make a showing in court that the costs of arbitrating their employment claims would be prohibitive.

The Supreme Court, however, has not elaborated on how detailed the showing of prohibitive expense need be to invalidate an agreement to arbitrate; and neither has the Second Circuit. *Zambrano*, at *7. And the federal circuits are split on the issue.

---

defendant waived certain provisions, including the fee-shifting provision). Defendant reserves its right to recover any fees that may be waived should an arbitrator conclude that Plaintiffs were independent contractors who performed services under commercial contracts." *Buckley* Reply Brief, p. 9 fn. 12. Halberstam Decl., Exhibit N.

20

*1)*     *The* Morrison *Standard.*

In *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir.2001), the

Fourth Circuit held that, in the employment discrimination context, courts should apply a case-

by-case analysis that examines (1) the potential litigant's ability to pay arbitration costs and fees;

(2) the difference between the costs of arbitration to the litigant and the costs of a judicial forum;

and (3) whether that difference "is so substantial as to deter the bringing of claims" in the arbitral

forum. With respect to (1) and (2) *Bradford* emphasized that "an appropriate case-by-case

inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay

those costs, measured against a baseline of the claimant's expected costs for litigating and his

ability to pay those costs." *Id.* n. 5. In keeping with *Greentree*, the party opposing arbitration—

i.e. the plaintiff— bears the burden of demonstrating these elements. *Bradford*, at 557. Courts

applying *Bradford* in the employment litigation context have, therefore, insisted that plaintiffs

demonstrate their inability to pay by providing proof of their own financial condition. Moreover,

under *Bradford*, a party's likelihood of bearing arbitration costs is typically deemed too

speculative to grant judicial relief until the arbitration is complete. *See Morrison v. Circuit City

Stores, Inc.* 317 F.3d 646, 660-661 (6th Cir.2003). One solution has been for courts to engage in

post-hoc judicial review of arbitration costs. *See, e.g., Arakawa v. Japan Network Group*, 56

F.Supp.2d 349, 355 (S.D.N.Y. 1999) ("At this point in the litigation it is not clear how large the

fees of the arbitration will be or whether plaintiff will be required to pay any portion of it....").[7]

The Ninth Circuit, however, in *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 n. 5

(2002), has held that any arrangement in which the employee is required to split the arbitrator's

fees renders an arbitration agreement unenforceable. The court reasoned that plaintiff employees

---

[7] In *Greentree*, where the arbitration clause was silent as to costs, the court found that "[t]he 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id*, at 90-91. But here, the arbitration clause contains a cost-splitting provision as to arbitration coasts, and a "bear-your-own-costs provision".

21

should not "have to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id.*; see also *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir.2003); *Veliz v. Cintas Corp.*, No. 03-01180(SBA), 2005 WL 1048699, at *3 (N.D.Cal. May 4, 2005). *See also Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1481 (D.D.C. 1997) ("[W]e hold that an arbitrator's compensation and expenses must be paid by the employer alone."); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (holding that "steep" costs, at least, constitute "a legitimate basis for a conclusion that the clause does not comport with statutory policy").

The Sixth Circuit takes a "revised case-by-case approach," holding that "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough *to deter them and similarly situated individuals* from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison v. Circuit City Stores, Inc.* 317 F.3d 646, 669 (6th Cir.2003) (emphasis added). *Morrison* identifies several severe short-comings of the *Bradford* approach.

**Post Hoc Judicial Review.** First, *Morrison* rightly points out that "requiring the plaintiff to come forward with concrete estimates of anticipated or expected arbitration costs," which courts applying *Bradford* do, "asks too much at this initial stage in the proceedings." *Morrison* at 660-61. And while *post-hoc* judicial review of actual costs is attractive, because of the certainty it provides, this is only "superficial." First, judicial review of arbitration awards is very narrow, which means that an arbitrator's decision about costs is unlikely to be overturned. Moreover, even if (post-hoc) judicial review could serve this function, the "arbitrate first and review the award of costs later" approach "overlooks how deterrence operates". *Id.* at 662. "After the plaintiff has arbitrated her claims, reviewing courts will not likely determine that this risk deterred the plaintiff; after all the plaintiff has already arbitrated her claims." *Id.* at 662 (citing

22

*Ahning v. Lehman Bros., Inc.,* No. 94 Civ. 9027 (CSH), 2000 WL 460443, at \*13 (S.D.N.Y.

April 18, 2000) (noting that potential arbitration costs had not "prevented [claimant] from having

a full opportunity to vindicate her Title VII rights in the arbitral forum."). The *Morrison* court

explains:

> Deterrence [however] occurs early in the process. If we do not
> know who will prevail on the ultimate cost-splitting question until
> the end, we know who has lost from the beginning: those whom
> the cost-splitting provision deterred from initiating their claims at
> all.
>
> In sum, the *post hoc* judicial review approach places
> plaintiffs in a kind of "Catch-22." They cannot claim, in advance
> of arbitration, that the risk of incurring arbitration costs would
> deter them from arbitrating their claims because they do not know
> what the costs will be, but if they arbitrate and actually incur costs,
> they cannot then argue that the costs deterred them because they
> have already arbitrated their claims. Just as Yossarian could not
> escape flying combat missions by claiming that he was crazy
> because anyone wanting to be released from combat must be sane,
> under this approach potential litigants cannot escape arbitration by
> claiming that the costs are prohibitive until after arbitration, at
> which point the costs were not prohibitive, because the litigants
> actually arbitrated their disputes.

*Id.*, at 663.

In short, courts should consider the deterrent effect of expected arbitration fees and costs,

instead of dismissing a reasonable assessment of a claimants' arbitration costs as "speculative"

until the arbitration has actually concluded—especially where, as here, and unlike in *Greentree*,

the Cost-Sharing Provision threatens to saddle claimant employees with substantial arbitration

fees and costs.

**Scrutiny of Plaintiff's "Ability to Pay".** Similarly, *Bradford*'s focus on the individual

litigant's ability to pay attorney's fees and costs, fails to satisfy the deterrent function of the

employee's federal statutory cause of action. *Morrison,* at 663. But *Gilmer* held that the *remedial*

*and deterrent function* of the statute depends on the prospective litigant's ability to effectively

vindicate [his or her] statutory cause in arbitration. 500 U.S., at 28 (emphasis added). *Morrison*

rightly points out that "while the remedial function of the statute is satisfied by a particular

plaintiff's ability to pursue their claims, the deterrent function requires a consideration of

'broader social purposes'." *Morrison*, 317 F.3d, at 664 (citing *Gilmer*, 500 U.S. at 28).

> The deterrent function of the laws in question is, in part, that
> employers who engage in discriminatory practices are aware that
> they may incur liability in more than one case. If, however, a cost-
> splitting provision would deter a substantial number of potential
> litigants, then that provision undermines the deterrent effect of the
> anti-discrimination statutes.…[I]n addressing the effect of
> arbitration costs…the reviewing court should look to average or
> typical arbitration costs, because that is the kind of information
> that potential litigants will take into account in deciding whether to
> bring their claims in the arbitral forum.

*Id.*, at 664. Nothing in *Greentree* requires a court to examine a plaintiff's personal financial

condition. *Morrison*, 317 F.3d, at 663-664 (citing *Giordano v. Pep Boys—Manny, Moe & Jack,

Inc.*, No. CIV. A. 99–1281, 2001 WL 484360, at *6 (E.D.Pa. March 29, 2001)).

Morrison, therefore, adopts a modified case-by-case approach holding that "potential

litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the

potential costs of arbitration are great enough to deter them and similarly situated individuals

from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison*, 317 F.3d,

at 663. In other words, "if the reviewing court finds that [a] cost-splitting provision would deter a

substantial number of similarly situated potential litigants, it should refuse to enforce the cost-

splitting provision in order to serve the underlying functions of the federal statute." *Id.*

**Likelihood of Bearing Costs**. Morrison notes that "under this analysis, the reviewing

court should discount the possibilities that the plaintiff will not be required to pay costs or

arbitral fees because of ultimate success on the merits, either because of cost-shifting provisions

in the arbitration agreement or because the arbitrator decides that such costs or fees are contrary

to federal law." *Id.*, at 665. "The issue is whether the terms of the arbitration agreement itself

would deter a substantial number of similarly situated employees from bringing their claims in

the arbitral forum, and thus the court must consider the decision-making process of these potential litigants. In many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration." *Id.* at 665.

*Bradford* is not controlling in this Circuit.[8] And none of the Courts applying *Bradford* in the Second Circuit have considered its serious shortcomings or the better reasoned alternative approach put forth by the Sixth Circuit in *Morrison*. The Second Circuit has not ruled on the issue and different districts in the Second Circuit follow different approaches. See *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 458, 463 (E.D.N.Y. 2006) (collecting cases). While the courts in *EEOC* and *Ball v. SFX Broadcasting, Inc.*, 165 F.Supp.2d 230, 239-40 (N.D.N.Y.2001), that reject the Fourth Circuit approach, engage in a thorough, reasoned examination of the competing approaches in the different Circuits, the courts in this district who have applied *Bradford* have never examined *Bradford*'s highly problematic approach, or compared it to the more reasoned approach taken by the Sixth Circuit in *Morrison*.[1]

We ask this court to do so and to adopt the *Morrison* approach.

2) *The Arbitration Clause Is Unenforceable, Because It Would Deter A Substantial Number Of Similarly Situated Persons From Attempting To Vindicate Their Statutory Rights In The Arbitral Forum*

Under *Morrison* the court must look at whether the cost of arbitration would have a "chilling effect" on similarly situated litigants, as opposed to merely the particular plaintiffs in

---

[8] Note that in *Brady*, the New York Court of Appeals cites both *Bradford* and *Morrison* with approval. 17 N.Y.3., at 467. While the opinion leaves room for interpretation, it indicates that *Bradford* provides a starting point for the analysis ("at a minimum") thus leaving room for the modified case-by-case approach adopted by *Morrison*. *Id.* At any rate, *Brady* is not controlling in federal court in this respect, because the "effective vindication" doctrine is a judge-made exception to the enforcement of the FAA, and therefore constitutes an interpretation of federal statutes, not state contract law.

the case. *Morrison v. Circuit City Stores, Inc.* 317 F.3d 646, 669 (6th Cir.2003). Under this approach, "[t]he court must evaluate the likely cost of arbitration not in absolute terms, but relative to the likely costs of litigation." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 511 (6th Cir. 2004). If the court finds that the costs of arbitration would deter "a substantial number of similarly situated persons from attempting to vindicate their statutory rights in the arbitral forum …," the agreement to arbitrate is unenforceable. *Morrison*, 317 F.3d at 670.

Here the arbitration clause requires that "[e]ach party [1] shall pay an equal share of the arbitrator's fees and expenses and [2] shall bear its own attorney's fees, witness fees and other costs concerning the arbitration." Should this Cost-Sharing Provision be enforced, each of the plaintiffs will bear substantial additional costs arbitrating their employee rights and may not be able to recover attorney's fees and costs, even if they succeeded on their claims. Should the Cost-Sharing provision be stricken, plaintiff may still be required to proceed under the AAA's Commercial Fee Schedule, which would impose substantial fees and costs on Plaintiffs. By contrast, the extra fees, arbitrator compensation, and other arbitration costs discussed below, would not apply when litigating in federal court; nor would the threat of Plaintiffs having to bear their own attorney's fees and costs.

> (a)  Costs of Litigation Versus Costs of Arbitration Under The Cost-Sharing Provision And The Commercial Rules

Under the AAA's Commercial Arbitration Fee Schedule, the fees for claims below $75,000 are $1,750, with the initial filing fee of $925 payable by the party that files the claim(s). *Id.* The AAA assesses a $175 additional party fee per party, not to exceed 50 % of the base fee, payable by the party that names the additional parties. *Id.* Under the Commercial Fee Schedule each claimant would thus pay $875 in additional party fees to include the administrator and plan defendants for purposes of maintaining the viability of their ERISA claims. Upfront fees would amount to $1,800 just to file their claims. The NFL and the other defendants refuse to permit

joinder or consolidation of plaintiffs claims in one proceeding—as they already are before this court.[9] Therefore plaintiffs together would face a total of $12,600 in fees upfront; and a total of $18,375 in filing fees (including the final fee). In contrast, Plaintiffs' total filing costs in federal district court are $400, which have already been paid.

Arbitrator compensation in New York City—the NFL's chosen forum—is at least $350 per hour.[10] Assuming 20 hours of arbitrator compensation, which is a likely minimum, that amounts to $7000.[11] The NFL and the other defendants refuse to permit consolidation of plaintiffs' claims in one proceeding—as they already are in this court. Therefore total arbitrator compensation amounts to $49,000, of which plaintiffs' are required to pay 50% or $24,500 under the arbitration clause and the Commercial Rules.[12] Plaintiffs pay no arbitrator compensation in federal court.

The AAA charges a room rental fee of $600 for the hearing. The NFL and the other defendants refuse to permit consolidation of plaintiffs' claims in one proceeding—as they already are in this court. Total room rental fees for the hearings amount to $4,200, of which plaintiffs would be responsible for 50 % or $2,100. Plaintiffs pay no courtroom fees in federal court.

Additionally, parties pay court reporter or stenography costs for arbitration hearings, which they do not in federal court.

---

[9] The NFL has also refused to join or consolidate plaintiff employees' claims in the *Buckley* case, when approached on the issue by plaintiffs' counsel in that case. Halberstam Decl. ¶ 17.

[10] Deborah Rothman, *Trends in Arbitrator Compensation in* Dispute Resolution Magazine 8 (Spring 2007) ("Anecdotal and off-the-record conversations suggest that AAA arbitrators charge as little as $300 and as much as $1,150 an hour (with a few "superstars" charging significantly more) and that rates tend to be highest in the largest markets of New York, Los Angeles, and San Francisco.") available at
https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.authcheckdam.pdf.

[11] A 2011 empirical study of AAA arbitrator fees in employment cases in California finds that "among the cases that resulted in a final award following a hearing, the median fee charged was $7,138 and the mean fee charged was $11,070." Alexander J.S. Colvin, *An Empirical Study of Employment Arbitration: Case Outcomes and Processes*, 8 J. Legal Stud. 1, 9 (March, 2011).

[12] Based on the mean fee in the outdated California study, arbitrator costs would be around $11,000 per claim, for a total of $55,000, with plaintiffs responsible for $27,500.

27

Assuming a minimum level of fees, arbitrator compensation, and hearing room costs, and proceeding separately with their individual claims under the Commercial Fee Schedule, each plaintiff will be required to pay an additional minimum of $6,425.00 to pursue their claims in arbitration. Plaintiffs as a group face an additional $44,975 in fees, arbitrator compensation, and hearing room costs.

Assuming the next higher level of fees (claims from $75,000–$150,000), and the mean arbitrator compensation in employment cases of around $11,000, referenced in the California empirical study (which is outdated and sure to underestimate arbitrator compensation in New York City), the more realistic additional cost of arbitration for at least some of the plaintiffs with higher claims is $9,850 for each claimant or $68,950 in additional fees for the group.

(b)     Costs of Arbitration Have a Chilling Effect on Plaintiffs

Without an order conditioning arbitration on the application of the AAA's Employment Fee Schedule, Plaintiffs could very well face additional costs of arbitration between $44,975 and $68,950, and more, or between $6,425.00 and $9,850 for each individual Plaintiff.  Under *Morrison*, courts "should discount the possibilities that the plaintiff will not be required to pay costs or arbitral fees." *Id.* And the focus should not be on actually proven cost *ex post facto*, because that would fail to capture those who did not proceed to arbitration, because they were deterred by the costs. Moreover, plaintiffs are not required to prove inability to pay for each individual plaintiff based on their financial condition but that "potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison*, at 663.

Here, Plaintiffs Agnew, Alston, and Armitage affirm that that "[i]t would be an extreme hardship for [them] to pursue [their] employment claims against the NFL and the other defendants, if [they] were expected to pay filing fees of more than $1,500 and total arbitration

28

costs and fees of more than $5,000" each. *See* Agnew Decl. ¶ 25, Alston Decl. ¶23, Armitage Decl. ¶ 25.

## IV. ARBITRABILITY SHOULD BE DECIDED BY THIS COURT

Defendants rely on *Henry Schein, Inc. et al. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019) to argue that any outstanding issue regarding arbitrability…should be resolved in the arbitral forum." Defendants' Memo at *15-16. *Schein* does not support this conclusion. In *Schein*, the Supreme Court merely overturned the "needlessly groundless exception" to arbitrability, but did not state that courts should no longer test the validity or enforceability of an arbitration clause.

## V. THE COURT SHOULD NOT DISMISS PLAINTIFFS' CLAIMS

In staying the case pending the completion of arbitration, Judge Schofield followed Second Circuit precedent in *Katz v. Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015), which held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Here too, any dismissal of Plaintiffs' claims would be inappropriate..

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court deny Defendants motion to compel arbitration. In the alternative, Plaintiffs seek an order from this court, (1) severing the cost-sharing provision, (2) conditioning the arbitration on the application of the AAA's Employment Arbitration Fee Schedule, and (3) staying the case before this court pending the outcome of arbitration.

Dated:  March 6, 2019                    Respectfully submitted,

Cleveland, Ohio

THE CHANDRA LAW FIRM LLC

By: */s/ Michael Halberstam*

Michael Halberstam

Subodh Chandra
Donald P. Screen
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West 6th Street, Suite 400
Cleveland, OH 44113
Phone: (216) 578-1700
Facsimile: (216) 578-1800
E-mail:
Michael.Halberstam@ChandraLaw.com
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com