USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6-7-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK FORAN, ET AL.,

Plaintiffs,

-against-

NATIONAL FOOTBALL LEAGUE, ET AL.,

Defendants.

1:18-cv-10857 (ALC)

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District Judge:

Plaintiffs Patrick Foran, Tommy Alston, Michael Armitage, Joseph Doorley, Thomas Malecek, Dag Sohlberg and Robert Agnew ("Plaintiffs") bring this action for declaratory judgment against Defendants National Football League (the "NFL"), NFL Employee Reciprocal Flexible Benefits Plan, National Football League Capital Accumulation Plan, NFL Pension Plan, NFL Reciprocal Trust, National Football League Employee Benefits Committee, Josh Schlitzer and John Doe Entities 1–10, alleging they were misclassified as independent contractors and as a result are entitled to unpaid overtime wages, pension-and-welfare benefits, and other employment related benefits and privileges. Amend. Compl., ECF No. 70. Before the Court is Defendants' Motion to Compel Arbitration and Stay All Proceedings. ECF No. 88. After careful consideration, Defendants' Motion is hereby **GRANTED** and the case is hereby **STAYED** pending the resolution of arbitration.

## BACKGROUND

Plaintiffs formerly served as Security Representatives for the Defendant NFL. As part of their responsibilities, Plaintiffs worked to ensure NFL member teams complied with NFL rules, security protocols and security procedures, amongst other duties commonly provided by security

1

specialists. Plaintiffs and the Defendant NFL entered into a series of contracts called "Security Representative Consulting Agreement[s]" (the "Agreements") that governed the services that plaintiffs provided to Defendant NFL. These Agreements included a "Dispute Resolution" provision that states:

> **Dispute Resolution.** Except as set forth in Section 17(b) (Availability of Equitable Remedies), any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association. The arbitration shall be conducted in accordance with the American Arbitration Association Rules. Any such arbitration shall be instituted in New York County, New York. Both parties shall give the arbitrator access to all documents, facilities, and personnel within their respective control to permit the arbitrator to perform his or her function. Judgment upon the award rendered may be entered in any court having jurisdiction. Each party shall pay an equal share of the arbitrator's fees and expenses and shall bear its own attorneys' fees, witness fees and other costs concerning the arbitration.

*See e.g.*, ECF Nos. 94-2 Exhibit H. The Agreements also provide that their terms are "to be governed by and construed in accordance with the laws of the State of New York." *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), which governs arbitration agreements, "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67(2010). *See also* 9 U.S.C. § 2. Parties may agree to have an arbitrator decide both "'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr.*, 561 U.S. at 68–69. *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Questions of arbitrability include: "(1) 'whether the parties are bound by a given arbitration clause' and (2) 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45

(E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)).

In deciding a motion compel, courts must first determine "whether the parties agreed to arbitrate." *Id.* Next, courts must decide "whether the issue of arbitrability is for the court or for the arbitrator." *Gringas v. Think Fin., Inc.*, 922 F.3d 112, 125 (2d Cir. 2019) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 565 (2d Cir. 2002)). As the Supreme Court recently held in *Schein*, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." 139 S.Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

When assessing whether to stay proceedings pending arbitration, "the movant must demonstrate that a stay is merited." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 664–65 (S.D.N.Y. 2011) (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). "Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 42 (2d Cir. 2009) (citations omitted).

## DISCUSSION

### I. Motion to Compel Arbitration

Courts look to state contract law to determine if plaintiffs have agreed to arbitrate. *See First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Credit Suisse First Boston Corp. v. Pitofsky*, 4 N.Y.3d 149, 154-55 (N.Y. 2005). In this case, the Agreements indicate that New York law will govern the contract. Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is

3

conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotations omitted). Here, the Plaintiffs signed the Agreements either individually or on behalf of their respective companies. Additionally, the Plaintiffs do not dispute the fact that they entered into arbitration agreements with the Defendant NFL. Thus, the Court finds that the Plaintiffs entered into arbitration agreements with the Defendant NFL.

In determining who should decide arbitrability, courts must examine the parties' arbitration agreement to determine if there is clear and unmistakable evidence that they agreed to arbitrate arbitrability. *See Schein*, 139 S.Ct. at 531; *Gingras*, 922 F.3d at 126. In general, courts have found "clear and unmistakable evidence" of parties' intention to arbitrate arbitrability when there is "[b]road language expressing an intention to arbitrate all aspects of all disputes . . ." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019). *See also Bolden v. DG TRC Mgmt. Co., LLC*, No. 19-CV-3425 (KMW), 2019 WL 2119622, at *4–7 (S.D.N.Y. May 15, 2019). Similarly, courts have concluded if "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). *See also Southside Hosp. v. New York State Nurses Ass'n*, 732 F. App'x 53, 55 (2d Cir. 2018); *Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*, 626 F. App'x 303, 305–06 (2d Cir. 2015).

In this case, the parties' arbitration agreements reflect an intention to arbitrate arbitrability for two primary reasons. First, the language of the arbitration agreements is very broad. Of relevance, the arbitration agreements provide "any dispute arising out of or related to

this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association." *See e.g.*, ECF Nos. 94-2 Exhibit H. Because these arbitration agreements seek to encompass any claims related to the Agreements or the security representatives' services, they are sufficiently broad. Second, the arbitration agreements specifically incorporate the procedures of the American Arbitration Association ("AAA"). "The rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Schein*, 139 S. Ct. at 528. As a result, the incorporation of the AAA rules necessitates that an arbitrator, as opposed to this Court, decide arbitrability.

"Where . . . contracting parties have evinced a clear an[d] unmistakable intent to delegate threshold arbitrability issues to an arbitrator, a court may not intervene 'unless [a party] challenge[s] the delegation provision specifically.'" *Bolden*, 2019 WL 2119622, at *6. (quoting *Rent-A-Ctr*, 130 S.Ct. at 72). *See also Gingras*, 922 F.3d at 126 (Plaintiffs' "specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court.") Here, Plaintiffs allege the arbitration agreements are invalid because the Agreements do not establish, and instead disclaim, employment relationships and statutory employment rights. Thus, Plaintiffs claim they did not expect or intend to arbitrate statutory employment rights that were not within the contemplation of the Agreements. The Plaintiffs further allege that the arbitration agreements are unenforceable because the cost-sharing provision prevents them from vindicating their rights under the Fair Labor Standards Act.

Neither of Plaintiffs' allegations concerning the invalidity or unenforceability of the arbitration agreements specifically challenge the delegation of authority to the arbitrator to

decide arbitrability. In fact, Plaintiffs' invalidity argument implicates the contracts in their entirety. Furthermore, Plaintiffs' unenforceability claim concerns the fees and cost provision of the arbitration agreements and not the delegation of authority to the arbitrator. As a result, since the Court holds that the delegation clauses are valid and enforceable, the arbitrator will resolve the arbitrability issues including scope, validity and enforceability.

**II.    Motion for Stay Pending Arbitration**

Pursuant to FAA, 9 U.S.C. § 3, this matter is stayed to allow the arbitration to proceed and conclude. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

## CONCLUSION

For the reasons set forth by the Court, Defendants' Motion to Compel Arbitration is hereby **GRANTED.** Litigation in this case is hereby **STAYED** pending the resolution of arbitration.

**SO ORDERED.**

**Dated: June 7, 2019**
  **New York, New York**                    ANDREW L. CARTER, JR.
                                            United States District Judge